**In re Gary & Jolene FALCONE, Debtors.**

**Gary & Jolene FALCONE, Plaintiffs,**

**v.**

**PROSPERITY BANK & TRUST, Defendant.**

**Bankruptcy No. 91–10685–T.**

**Adv. No. 91–1318–T.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

June 23, 1992.

Robert G. Mayer, Fairfax, Va., for debtors.

Peter K. Stackhouse, Linda E. Fitzgerald, Arlington, Va., for Prosperity Bank & Trust Co.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

The debtors, Gary and Jolene Falcone, filed a complaint under Bankruptcy Code § 506, to determine the extent and validity of a lien held by Prosperity Bank, and under §§ 362(a)(7), alleging that the bank made a setoff in violation of the automatic stay. The debtors filed a motion for summary judgment on their complaint. A hearing was held on April 22, 1992, and the issues were taken under advisement. Subsequently, the bank filed a summary judgment motion.

· Debtors' counsel has argued that even if their summary judgment motion is denied, a similar motion by the bank should not be granted because at trial debtors intend to present evidence of other defenses to Prosperity's claim.

For the reasons given in this memorandum opinion, both parties' motions for summary judgment on the issue of the lien determination will be denied, and the debtors' motion for summary judgment on the

issue of violation of the automatic stay will be granted.

### Findings of Fact

The debtors jointly filed a voluntary chapter 7 petition on February 22, 1991. Mr. Falcone is a lawyer, a bank director, and an experienced real estate investor.

Prior to their filing, the debtors had borrowed the sum of $50,000.00 from Prosperity Bank evidenced by their credit line note dated November 25, 1986, which was secured by a second deed of trust on their residence. The initial deed of trust securing the note was executed December 10, 1986. Three deeds of trust executed by the debtors were sequentially substituted for the original deed, and each substitute deed was duly recorded.

Prosperity's deed of trust (original and each substitute) is a four page standard form known as a "Fannie Mae/Freddie Mac UNIFORM INSTRUMENT; form 3047". On the first page the document states: "This Security Instrument secures to Lender: ... (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note."

The note secured by Prosperity's deed of trust is a two page document issued by Prosperity Bank and signed by the debtors. On the first page it states:

> ADDITIONAL COLLATERAL: This note is secured by the following described collateral security in addition to the real estate described on the above referenced Credit Line Deed of Trust: *2nd Deed of Trust on residence* ... The Additional Collateral secures all future advances made under this Note ... *(T)he Additional Collateral also secures any other liability of any Party* ... to the Bank whether absolute or contingent, whether joint or several, *which is now due or which hereafter becomes due* ... or which hereinafter may be contracted, including future advances.

(emphasis added).

Also prior to their bankruptcy filing, the debtors executed an unsecured guaranty on a $100,000.00 loan by Prosperity Bank to the law firm Falcone & Rosenfeld, LTD.

The bank obtained judgment against the law firm after it defaulted on the note.

Just prior to their filing bankruptcy, debtors arranged for a new loan from Dominion Bank for the purpose of satisfying the Prosperity second deed of trust on their residence. Five days postpetition Dominion Bank, on behalf of the debtors, issued a check for the sum of principal and interest owing on the credit line note to Prosperity Bank. Prosperity Bank accepted the payment of $50,788.10 from Dominion Bank on February 27, 1991, and applied the funds to the balance owed on the credit line note. Additionally, Prosperity, without seeking bankruptcy court approval, then transferred $50,000.00 of the debtors' guaranty liability on the $100,000.00 Falcone & Rosenfeld note to the credit line debt. Thus by Prosperity's accounting, even though the debtors believed they had paid the secured credit line note in full, the debtors still owed $50,000.00 under the credit line note and $50,000.00 under the guaranty.

When it made payment of the debtors' loan proceeds to Prosperity, Dominion Bank demanded a release of the deed of trust. However, Prosperity Bank refused to release the deed of trust, claiming that it retained its interest in the deed of trust because other secured liabilities of the debtors remained outstanding.

### Discussion and Conclusions of Law

A motion for summary judgment is governed by Bankruptcy Rule 7056, which incorporates Fed.R.Civ.P. 56 in adversary proceedings. Under this rule a court may consider pleadings, answers to interrogatories, admissions, and any affidavits in order to determine if there is any genuine issue as to any material fact in the proceeding before the court. Fed.R.Civ.P. 56(c). If there is not material issue of fact to be established at a trial and the movant is entitled to judgment as a matter of law, then the court may grant summary judgment.

In this proceeding the debtors seek summary judgment on two issues. (1) That the credit line deed of trust executed by the

debtors granted to the bank a security interest in the debtors' residence only for the sum borrowed on the credit line note. (2) That Prosperity violated the automatic stay by effectively setting off the payment made on the credit line note against the debtors' guaranty debt (that is, by transferring $50,000.00 of the guaranty debt to the credit line account). Prosperity's defense is that the deed of trust securing the credit line note also secured the guaranty through operation of cross-collateral terms in the loan documents.

■ The issue here is novel. To summarize the court's findings of fact, the debtors signed a promissory note for a credit line loan in the original amount of $50,000.00. This note was to be specifically secured by a second deed of trust on the debtors' residence. However, the loan documents contained additional language which the court must interpret. The note stated not only that it was secured by a second deed of trust on the residence but also that this collateral would secure any other debt of the borrowers to the bank. The deed of trust form stated that it secured not only debtors' payment of the note but also the borrowers' performance of "covenants and agreements under this Security Instrument and the Note." Prosperity argues that this circuitous language effectively served to give it a second deed of trust security in the residence for the debtors' separate obligation under their guaranty of a defaulted note in the amount of $100,000.00.

■ A deed of trust is in the nature of a contract and barring a showing of a contrary intent of the parties will be construed according to its terms. VA.CODE ANN. § 55–59; see In re Liberty Construction & Development Corporation, 106 B.R. 458, 461 (Bankr.E.D.Va.1989). However, in some circumstances a court may look beyond the terms contained within the loan documents for indicia of the parties' intent. See Seattle–First National Bank v. Continental Illinois National Bank and Trust, No. 84 C 1416, slip op. at 17, 1986 WL 5635 (N.D.Ill. May 2, 1986) (looking beyond the language of the note, which used a banker's standard form, re-

vealed that the intent of the parties differed from the general printed provisions). Here, the debtors' professional expertise suggests that there is no reason for this court to inquire beyond the printed provisions of the cross-collateralizing note and deed of trust.

Upon the failure of the law firm to pay its $100,000.00 note, the debtors' guaranty made them liable to pay this sum to the bank. VA.CODE ANN. § 8.3–416; see generally Printing Department Inc. v. Xerox Corporation, 20 B.R. 677 (Bankr. E.D.Va.1981) (discussing the liability of a guarantor after default of the principal). Debtors' liability under the guaranty arose prior to their payment of the credit line note. Although the structure of the Prosperity documents is not the best, this court can only conclude from the face of the note and deed of trust that Prosperity had indeed secured debtors' obligation under their guaranty with the second deed of trust on their residence. Consequently, at the time the debtors paid off their credit line note, the bank's deed of trust remained on the residence as collateral for the guaranty. Since the court finds that the note and deed of trust by their terms transformed the Falcones' guaranty from an unsecured debt to a debt secured by the deed of trust, the Falcones are not entitled to judgment as a matter of law, and thus their motion for summary judgment must be denied.

■ The second issue is whether the bank violated the automatic stay by its postpetition accounting procedure of transferring $50,000.00 of debtors' guaranty indebtedness to the credit line note account. Generally, the payment of a note extinguishes the instrument. Green v. Foley, 856 F.2d 660, 665 (4th Cir.1988), cert. denied, 490 U.S. 1031, 109 S.Ct. 1769, 104 L.Ed.2d 204 (1989); Whitehead v. Planters Bank & Trust Co., 180 Va. 76, 81–82, 21 S.E.2d 724, 727 (1942). Here, upon payment of the $50,788.10, the debtors extinguished their credit line note. After the payment the bank no longer held a credit line obligation from the debtors. Thus, although Prosperity may have retained a

security interest in the residence under its documents, there was no longer a credit line account balance justifying the bank's accounting maneuver.

Section 362 of the Bankruptcy Code stays collection action against the debtor, the debtor's property and the property of the estate. 11 U.S.C. § 362. Whether the bank violated the stay essentially depends upon whether the bank interfered with the debtors' estate. *See Printing Department, supra* at 680. It is not clear to the court why the bank charged $50,000.00 to the credit line account. However, it will depend upon the outcome of trial as to whether the bank's accounting maneuver had an impact on debtors' estate. It is nevertheless clear that the bank's effective setoff was at least a technical violation of the automatic stay and must be retracted. Accordingly, debtors' motion for summary judgment on this issue will be granted.

The court will deny Prosperity Bank's motion for summary judgment on the lien avoidance issue since it appears that debtors have possible alternative positions concerning the validity of the bank's secured claim. Debtors should have an opportunity to present evidence at trial.

A separate order will be entered denying both motions for summary judgment on the issue of the lien determination, and granting the debtors' motion for summary judgment on the alleged violation of the stay. Prosperity will be ordered to reverse its setoff or transfer of one loan account to another.